UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

UNITED STATES OF AMERICA,

       -v.-

                                            07-CR-00566 (GBD)

KEITH CLARK, *et al.*,

             Defendants.

-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KEITH CLARK'S MOTION FOR BAIL PENDING TRIAL

                                            GARY G. BECKER
                                            GARY G. BECKER, LLC
                                            200 W. 57TH STREET, SUITE 900
                                            NEW YORK, NY 10019
                                            212-981-1980
                                            *Attorney for Defendant Keith Clark*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

    -v.-

                                                   07-CR-00566 (GBD)

KEITH CLARK, *et al.*,

            Defendants.

------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KEITH CLARK'S MOTION FOR BAIL PENDING TRIAL

### Introduction

    Mr. Clark is a thirty-eight-year-old native New Yorker who has lived at only two residences, both in New York City, in his entire life. Since his arrest in this case on May 23, 2007, he has been continuously incarcerated at the Metropolitan Detention Center in Brooklyn. Mr. Clark's roots in New York are nurtured by a close-knit group of financially responsible family and friends who are willing to post real property and sign a bail bond on his behalf. Mr. Clark holds no passport and no currency. He has neither the means nor the desire to flee the jurisdiction. Owing to serious medical problems, including Type 2 Diabetes and joint disease, he is likely physically incapable of fleeing even if he wanted to.

    Thus, notwithstanding the undeniably serious charges and potentially lengthy prison sentence he faces, Mr. Clark poses virtually no risk of flight or danger to the community and

1

is eminently deserving of bail. As discussed below, the proposed bail package is more substantial than that recommended by Pre-Trial Services at the time of Mr. Clark's initial appearance before the magistrate, or that which was approved with respect to two of Mr. Clark's co-defendants, both of whom face charges identical to Mr. Clark's.

Mr. Clark is before this Court as one of ten defendants charged in a two-count Indictment alleging violations of Title 21 of the United States Code, sections 841(a)(1), 841(b)(1)(A) and 846. Mr. Clark is charged in Count One only, the conspiracy charge. If convicted, he faces a mandatory minimum sentence of ten years imprisonment and a maximum sentence of life imprisonment.[1] It is alleged that during an approximately nine-month period spanning September 2006 through May 2007, Mr. Clark participated in a conspiracy to distribute at least fifty grams of cocaine base, and five kilograms of cocaine. It is not alleged that Mr. Clark imported cocaine, or sold it in multi-kilogram quantities. Rather, the five kilogram cocaine threshold is allegedly met by attributing to Mr. Clarke quantities of cocaine sold by co-conspirators and by aggregating smaller quantities of cocaine that Mr. Clark distributed over time. There is no allegation that Mr. Clark possessed or used a firearm, or engaged in violence of any kind, during the commission of the offense.

A.   **Prior Proceedings**

Mr. Clark's first appearance in these proceedings was on May 23, 2007, before Magistrate Judge Kevin Nathaniel Fox. The Pre-Trial Services Report recommended that Mr. Clark be released on a bond secured by cash and/or property, and co-signed by three

---

1 Because Mr. Clark pleaded guilty in 1992 to violating New York Penal Laws §§ 110.00/220.16, attempted

2

financially responsible individuals, with the following conditions: (1) strict supervision by Pre-Trial Services; (2) travel restrictions to the Southern and Eastern Districts of New York; and (3) surrender of all travel documents and no new applications for travel documents.[2]

This recommendation was made following consideration of several factors, some negative to Mr. Clark, including his alleged failure to appear at certain past court dates (discussed *infra*), his periods of unemployment, and his prior criminal history (also discussed *infra*). The government sought detention, and Mr. Clark's then-assigned counsel agreed to imposition of a temporary order of detention without prejudice to make a bail application in the future. Thus, this is Mr. Clark's first application for bail.

**B.    The Proposed Bail Package**

The proposed bail package includes the undertakings of <u>five</u> financially responsible persons <u>and</u> the posting of a family residence, as follows:

**Kenneth Spencer** is a 61-year-old letter-carrier for the United States Postal Service, where he has worked since 1999, and where he earns approximately $47,000 per year. In addition to that job, he is also employed by the New York City Department of Juvenile Justice, located on Williams Street in lower Manhattan where he counsels adolescent and teenage boys who have been arrested. Mr. Spencer also earns approximately $47,000 in that position. Therefore, his combined income between the two positions is approximately $94,000 per year. Mr. Spencer is an uncle to Angela Brunson, Mr. Clark's long-time

---

possession of a controlled substance, a Class C felony, he is potentially subject, upon conviction here, to a minimum term of imprisonment of twenty years, pursuant to 21 U.S.C. § 841(b)(1)(a).
2 Counsel has reviewed the Report, but Pre-Trial Services does not permit its reports, or copies thereof to be retained by counsel.

companion, and he knows Mr. Clark for nearly two decades. Mr. Spencer is willing to sign a bond and to post a home he owns in Charlestown, West Virginia, valued at approximately $75,000.

**Meaka Watts** is the mother of Mr. Clark's 12-year-old daughter, Brianna. Ms. Watts has been steadily employed for the past eight years by HIP, the largest health-care provider in New York City, where she works as a customer care representative, earning approximately $40,000 per year.

**Angela Brunson** is Mr. Clark's paramour of seventeen years, and the mother of their two children, Kyanna and Demitri. Ms. Brunson has been employed for seven years as a customer services representative for the New York State Department of Motor Vehicles on Greenwich Street, where she earns approximately $38,000 per year.

**Vincent Clark** is Mr. Clark's brother, lives in the Bronx and works two full-time jobs. Mr. Clark is a case manager at the Lutheran Social Services Center of New York, which offers a variety of social service programs to low-income families throughout the metropolitan area. Additionally, he is a substance abuse counselor at The Educational Alliance, another social services agency, originally founded on the Lower East Side of New York.

**Santa Clark** is Mr. Clark's mother. Now 70, Mrs. Clark lives in the apartment where Mr. Clark was raised, at 2999 8th Avenue in Harlem. She relies primarily on social security payments for support.

The proposed suretors are not a wealthy people, but their willingness to risk

4

everything they have speaks very highly of the confidence they have in Mr. Clark and merits the Court's confidence as well. See United States v. Batista, 163 F.Supp.2d 222, 224-25 (S.D.N.Y. 2001) (collecting cases illustrating, among other things, that serving as a suretors and posting one's own home as bail, is indicative that proposed suretor exercises moral suasion to ensure defendant's presence at trial). See also United States v. Carbone, 793 F.2d 559, 561 (3d Cir. 1986) (finding defendant met burden of producing evidence to rebut presumption that he posed danger to community largely because friends vouched for defendant's character by posting residential properties as surety on bond); see also United States v. Lopez, 827 F. Supp. 1107, 1110 (D.N.J. 1993) (finding home equity pledged to Court to be sufficient security in rebuttable presumption drug trafficking case).

The proposed bail package is more substantial than that approved for two of Mr. Clark's co-defendants in this case, both of whom face charges identical to Mr. Clark's. These co-defendants were released on the following principal conditions:

- Terence McGee was released on May 23, 2007, on a $400,000 personal recognizance bond, cosigned by two financially responsible parties and $5,000 cash.

- Shanta Brown was also released on May 23, 2007, on a $50,000 personal recognizance bond, co-signed by four financially responsible parties and $3,500 cash, with strict supervision by Pre-Trial Services and a 7:30 p.m. curfew.

Accordingly, the proposed bail package here is consistent with earlier proceedings in

this case and would not create any disparity in treatment of co-defendants.

### C. Mr. Clark's Character, History, and Background

Keith Clark, at age 38, is a life-long New Yorker, and a dedicated father, spouse, and family member. He grew up in Harlem, raised by his mother after his father left the family when Keith was about five years old. Mr. Clark lived with his mother and paraplegic brother, Nobel, Jr., in the same three-bedroom apartment until he was thirty years old. At the time of his arrest, Mr. Clark was living in Far Rockaway, Queens with Angela Brunson, his companion of seventeen years, and their two children Kyanna, who is 15, and Demitri, age 10. He is devoted to Ms. Brunson, and is a loving father to his children with Ms. Brunson, and also to his daughter, Brianna Watts, who is 12 and lives with her mother, Meaka Watts, in Brooklyn, New York.

With the exception of Mr. Clark's father, who resides in South Carolina, and his sister, Carlena Clark, who lives in Virginia, Mr. Clark's entire family lives in New York, within a subway ride of his home in Queens. That includes his brothers, Vincent and Nobel, Jr., and his mother, Santa.

Mr. Clark has never held a passport, and has never traveled outside the United States. His only ventures outside the New York metropolitan area have been to visit Fort Lauderdale once, about 15 years ago, and more recent visits to his father in South Carolina, and his sister in Virginia.

Mr. Clark enjoys a close relationship with his family members. Despite the grim reality of Mr. Clark's current predicament, Ms. Brunson ensures that she and her children

6

visit Mr. Clark at the MDC at least weekly. Prior to his arrest, Mr. Clark provided financial and emotional support to both Ms. Brunson, and Ms. Watts.

Although Mr. Clark had the benefit of growing up in a loving household, his childhood was difficult. The family was poor, the neighborhood was crime-ravaged, jobs were scarce, and education was an afterthought. As was true for many in those circumstances, the abject poverty and lack of hope proved daunting to Mr. Clark. He attended public schools in Manhattan until the 11th grade, when he left school to work in a barber shop owned by his brother, Vincent. He worked for his brother for the next eight years, from about 1987 through 1995. During this time, Mr. Clark obtained his GED.

Most recently, in about 2000, Mr. Clark found work as a stock person in a wireless phone store called Studio 52, later renamed Last Chance Communications, located on 152nd Street and Eighth Avenue in Harlem. When Mr. Clark left the store about three years ago, after five years of employment there, he was earning just $10/hour.

### 1. Mr. Clark's Criminal History

Mr. Clark has had prior involvement in the criminal justice system, always in the state courts. Despite its length, however, Mr. Clark's criminal history has been relatively minor. He has a single felony conviction, in 1992, for attempted possession of cocaine, a Class C felony. Mr. Clark pleaded guilty when arraigned on the indictment in that case, and was sentenced to nine months imprisonment. See NYSID Criminal History Report provided by the government in discovery ("NYSID Report"), Bates Number 155-163, attached to Notice of Motion, as Exhibit A. Regrettably, Mr. Clark's other convictions, are not atypical of other

7

black men who grew up in the inner city in the 1990's when the crime rate in New York had soared to unprecedented levels. His offenses were all misdemeanors involving such conduct as unauthorized or unlicensed use of a motor vehicle, possession of gambling equipment, and possession of a stolen shopping mall gift card. The only arrest that even hinted at an underlying act of violence was one in 1994 for attempted assault. That charged resulted in Mr. Clark's plea of guilty to Attempted Assault in the Third Degree, a Class B Misdemeanor, and arose out of a domestic dispute with Ms. Watts. As evidenced by her readiness today to serve as a suretor for Mr. Clark, this dispute has long been resolved.

Mr. Clark's one other drug conviction was in 2004 and relates to his plea of guilty to Criminal Possession of Controlled Substance in the Seventh Degree, a violation of New York Penal Law § 220.03, a misdemeanor. See Exhibit A, NYSID Report, Bates Number 162-163. On information and belief, however, the "controlled substance" in question was Mr. Clark's diabetes medicine, for which he had a lawful prescription. Mr. Clark was arrested for that offense on December 30, 2004, and was held in the New York City Police Department Central Booking facility until the following day. At arraignment, he was advised by then-counsel that his best option was to plead guilty, because doing so would ensure that he was released in time to celebrate New Year's Eve that year.

The Pre-Trial Services Report, as well Mr. Clark's criminal history report provided by the government, state that in two prior misdemeanor cases courts issued bench warrants based on Mr. Clark's failure to appear. Notably, with respect to Mr. Clark's lone felony charge, the 1992 controlled substance offense, there is no suggestion that Mr. Clark ever

failed to appear in court as required. On information and belief, however, the warrant in one case was issued in error, and in the second matter, warrants were issued in response to Mr. Clark's failure to pay a fine which, ultimately, was paid in full.

In the first matter, approximately twenty years ago, a bench warrant was issued following Mr. Clark's 1988 arrest in Manhattan for unlawful possession of a slot machine. Notwithstanding that the charge was resolved in 1989 with Mr. Clark's plea of guilty to Disorderly Conduct, a non-criminal violation of New York Penal Law §240.20, the Pre-Trial Services Report indicates that this warrant remains open. A Certificate Disposition confirming that the case was resolved October 16, 1989, is attached to the Notice of Motion as Exhibit B.

The second matter involved warrants issued by the Bronx County Criminal Court in 1998 and 1999, and arose from Mr. Clark's arrest for unauthorized use of a motor vehicle on December 17, 1997. See Exhibit A, NYSID Report, Bates Stamped 157-158. The case was disposed of on December 22, 1997, pursuant to a plea of guilty to an unclassified misdemeanor. See Criminal Appearance History, Docket 97X072798, attached to Notice of Motion as Exhibit C.[3] See also NYSID report, Bates Stamped 158. Mr. Clark was sentenced to a three-year term of probation and a $1,000 fine, to be paid on installments in person at the court. Because of Mr. Clark's financial circumstances, he was not able to make each of the scheduled payments. As a result, bench warrants were issued on the occasion of these missed payments throughout 1998 and 1999, until Mr. Clark's payment in full of the $1,000 fine on

---

3 A more complete record of Mr. Clark's contact with the Criminal Court in this matter is not available, as that

9

June 14, 1999. Id.

### D.   Mr. Clark's Medical Problems

Mr. Clark suffers from a combination of diseases and ailments, which require vigilant medical care. These circumstances militate against continued pre-trial detention, not only because of the less-than-ideal medical care provided in the Metropolitan Detention Center, but because they make it virtually impossible for Mr. Clark to flee the jurisdiction even if he wanted to.

Mr. Clark suffers from Type 2 Diabetes, a form of the illness in which the insulin that the body produces is less efficient at moving sugar out of the bloodstream than in a healthy person. Sufferers of Type 2 Diabetes face increased risk for many serious complications, including: heart disease, retinopathy (blindness), neuropathy (nerve damage), and nephropathy (kidney disease). Mr. Clark was initially diagnosed approximately ten years ago; he is currently is administered a twice-daily dose of 1,000 milligrams of Metformin to treat his condition. As with all diabetics, it is paramount that Mr. Clark's nutritional status be closely monitored and that he have ready access to emergency care.

Prior to his arrest in this case, Mr. Clark maintained a regimented diet and fitness routine. Pre-trial detention has robbed him of that. Additionally, Mr. Clark has advised that on more than one occasion he has not received timely refills of Metformin. Furthermore, counsel has observed that while detained, Mr. Clark developed a rash covering his neck, which Mr. Clark informs also covers his shoulders and torso.

---

court's file cannot be located. See, Letter of William Kalish, Deputy Chief Clerk of the Bronx County Supreme

Mr. Clark also suffers from joint disease, apparently stemming from a childhood calcium deficiency. These joint problems are worsened by conditions at the MDC. Mr. Clark requires a special "bottom bunk" pass, because his hips are too weak to climb to the top bunk. On several occasions, however, evening guards at the MDC, unaware of Mr. Clark's condition, required him to climb to the top bunk, causing serious pain, and risking further damage to his hips.

Finally, Mr. Clark has, in the past, been diagnosed with asthma and narcolepsy. Although both conditions are not presenting symptoms now, they too would likely debilitate Mr. Clark if he were to try to flee the jurisdiction.

## ARGUMENT

**THE PROPOSED BAIL PACKAGE AND CONDITIONS OF RELEASE REBUT THE PRESUMPTION OF 18 U.S.C § 3142(e) AND REASONABLY ASSURE MR. CLARK'S FUTURE APPEARANCES AS REQUIRED AND TO SHIELD THE COMMUNITY FROM ANY THREAT OF DANGER**

A.   <u>**The Statutory Framework**</u>

Bail decisions are controlled by the Bail Reform Act of 1984, see 18 U.S.C. §§3141 *et seq*. The court has three basic options under the Act: (1) order the release of the defendant "on personal recognizance or upon executing an unsecured appearance bond;" (2) order the release of the defendant, subject to one or more other conditions designed to "reasonably assure" (not guarantee) the defendant's presence in court and the safety of the community;

---

Court, Criminal Division, attached as Exhibit D.

11

(3) upon motion of the government in a case involving, *inter alia*, certain controlled substance offenses, including violations of 21 U.S.C. 821, 841(a)(1) and 841(b)(1)(A)(vii), alleged herein, order detention, but only if the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. §3142(a) & (f).

Pre-trial detention is an extreme remedy that should apply to "very few defendants," United States v. Orta, 760 F.2d 887, 891 (2d Cir. 1985). "Because the law generally favors bail release, the government carries a dual burden in seeking pre-trial detention." United States v. Sabhnani, 493 F.3d 63, 75 (2d Cir. 2007). First, the government must prove that the defendant poses a risk of flight or is a danger to the community (danger must be proved by clear and convincing evidence); then it must prove that no condition or combination of conditions will reasonably assure the defendant's presence in court or safety of the community. 18 U.S.C. §3142(c)(1)(B); Sabhnani, 493 F.3d, at 75(vacating order of detention because of deficient proof on "the second prong of the government's burden"); see also United States v. Salerno, 481 U.S. 739, 752 (1987) (upholding the constitutionality of the Bail Reform Act, but cautioning against "scattershot attempt[s] to incapacitate those who are merely suspected of [] serious crimes").

As noted, in a case involving certain controlled substance offenses, including violations of 21 U.S.C. §§821, 841(a)(1) and 841(b)(1)(A)(vii), alleged herein, detention may be ordered if the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the

community." 18 U.S.C. §3142 (3). A "rebuttable presumption" of detention arises if, as here, a defendant is charged with a narcotics offense carrying a maximum term of imprisonment of ten years or more under the Controlled Substances Act (21 U.S.C. §§ 801 *et seq.*). 18 U.S.C. §3142(e).

Even when the rebuttable presumption applies, however, the burden still rests squarely with the government. The presumption is merely one factor in assessing the propriety of pre-trial detention and does not relieve the government from its burden of proving that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §§3142(e), (f); see also United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

In determining whether the government has met its ultimate burden, the Court should consider the following statutory factors:

    (1) the nature and circumstances of the offense charged;

    (2) the weight of the evidence against the person;

    (3) the nature and seriousness of the danger to any person or the community that would be posed by the person's release; and

    (4) the history and characteristics of the person including his family ties, employment record, community ties, history of drug or alcohol abuse, criminal history, and whether at the time of the offense he was on probation or parole.

18 U.S.C. § 3142(g).

Consideration of these factors demonstrates that continued detention is not appropriate

in this case and that the Court can certainly fashion conditions of release that will reasonably assure Mr. Clark's presence at future court proceedings and the safety of the community.

The charges are certainly extremely serious and the potential penalties harsh but those factors alone are not enough to warrant detention lest the Court engraft an impermissible "automatic detention" rule for persons charged with violations of 21 U.S.C. §841(b)(1)(A), an undertaking Congress specifically declined to impose. And while we do not here question the sufficiency of the evidence, which appears in large part to be based on recordings and the testimony of "cooperators" who stand to gain immeasurably by providing evidence against Mr. Clark, we remind the Court that "nothing in [the Bail Reform Act] shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. §3142(j).

The government may assert that if released on bail Mr. Clark will be able to threaten witnesses, or otherwise obstruct justice, but absent any evidence to support such a contention, a denial of bail on those grounds would constitute unconstitutional preventative detention. See, Salerno, 481 U.S. 739, 755.

Regardless, the other pertinent statutory factors weigh heavily in Mr. Clark's favor. His deep roots in New York City, his lack of travel documents or assets, and the willingness of family and friends to co-sign a substantial bond all provide considerable assurance that Mr. Clark poses virtually no risk of flight or danger to the community. He is not a drug user, he is not accused of committing the offense while under the process of another court, and there can be no showing that his release will endanger the safety of anyone. Indeed, the conditions of strict monitoring by Pre-Trial Services "shield[] defendant from the

14

community, thereby removing the opportunity for him to participate in criminal activity while he awaits trial." Lopez, 827 F.Supp. at 1110.

Mr. Clark is a devoted father, and his pre-trial detention also imposes a great hardship on his young children and their mothers. See United States v. Friedman, 837 F.2d 48, 49-50 (2d Cir. 1988) (granting bail to defendant accused of sending and receiving child pornography, based, in part on the fact that "it is undisputed that Friedman is a life-long New York resident, that he has no prior criminal record, that he has no passport or known ability to evade surveillance, that he is married and has three children, all of whom live in the New York area").

## CONCLUSION

Notwithstanding the seriousness of the charges and potential penalties, Mr. Clark is eminently bail-worthy. Accordingly, consistent with the Eighth Amendment and the Bail Reform Act, the Court should release Mr. Clark on the conditions proposed herein, and on any other conditions the Court deems appropriate to reasonably assure Mr. Clark's appearance at future court proceedings and the safety of the community.

Dated: New York, New York
       April 22, 2008

Respectfully submitted,

GARY G. BECKER
200 West 57th Street, Ste. 900
New York, NY 10019
212-981-1980
Attorney for Keith Clark

15